Again, good afternoon. I just want to put the case in perspective what we're dealing with. We're dealing with not a case of trying to reform a contract by any stretch of the means, not trying to add or insert any terms. This is a case where there's a promissory note that's used every day in the Wall Street financial world to assist startups in carrying on their business. Without them, they wouldn't exist if it wasn't for notes just like this. Again, when I took this case on as a second attorney, I consulted with a couple of people in the industry and sent them the contract, and one of them said this is exclusive to what he does, and I don't. I'm a personal injury attorney. But I went to NYU, so I thought I had enough intelligence to handle the case, but having literally spent 500 hours on it in the last three and a half years, that's no exaggeration. I guess I don't have the intelligence because I'm on the losing side as we stand here. Okay, so the people I consulted said they write these every day. The only criticism they had of the note is that he says, hey, if I was drafted a note, I would have separated out a separate paragraph for the, quote, additional consideration. If you put in a separate paragraph, he said they wouldn't take the same position as the judge took at the time. You would leave in the phrase additional consideration? Do I what? You would leave in the phrase additional consideration? Again, I don't object to that. You could obviously write something different, use word, but again, if you're going to be nitpicking, you could say as compensation for relieving the CEO of his personal guarantee, which is how this all started, then they're going to give the restricted stock because that's how it all started, is that there was a retainer agreement where he personally guaranteed, and two weeks later comes this promissory note, and he says, hey, I'm not going to guarantee the promissory note, but I'm going to, you know, let the stocks, you know, stay in. But here's the thing, and I've been practicing 40 years. I certainly haven't seen it all, but this has got to be the first and only case where I've literally had a trial judge stymie me on doing anything, again, past the pleading stage. That's because it's bedrock New York law that if the contract is unambiguous, you don't get discovery. You don't look outside the contract, and if they call it additional consideration, whether it's a separate paragraph or not, it's additional consideration for the loan. That's what they called it. That's what it is. You don't get discovery under New York law if the language is clear, and I don't think it could be any clearer than that, right? You are trying to reform the contract. You started out by saying we're not trying to change the language of the contract. You want to say even though it says it's additional consideration for the loan, that's not really true. It wasn't really additional consideration for the loan. New York law says you're out of luck because it's clear. No, it was, again, and as I said in my paper, you can go open Black's Law Dictionary and you see six or seven pages defying the word consideration. So it can't be- We don't have to worry about that because the contract says it's additional consideration for the loan. We don't have to worry about what the definition of consideration is, although I disagree with you. I think it's pretty clear what consideration is for a contract, but it tells us that it's consideration for a contract. And under New York law, New York General Obligation Court 5-501 Section 2, it says that any form of consideration, whatever its form is, it counts towards interest. So what am I missing? The missing is, again, the cases that talk about not being allowed to use extrinsic evidence to reform or explain. Again, none of them say that on a simple one word to show what the party's intent was. Again, I can take every case that my adversary cited and use it for my support because all of them say that extrinsic evidence can be used to be shown intent if an ambiguous word is used. And the word my argument is the word additional consideration is in and of itself is ambiguous. What are its two meanings? I would say this. I could take a hundred attorneys and ask- No, your point was that the phrase additional consideration is ambiguous. That's what you just said. What I'm asking you is what, in your view, are its two meanings? Well, I'm going to admit that I'm 40 years, as I said, after law school. To this day, I still don't understand fully and couldn't explain. I couldn't go teach a contract course, even though I got an A in contracts. I couldn't teach and define the word consideration to the class. I wouldn't feel myself competent other than it's exchanged for, a bargain, something that was part of the bargain that was made. But, again, let me speak to the second, again, more important for my case than this is. Let's assume that it's consideration. Let's say that it's consideration. How is it to be valued? And a case cited by my adversary, an 1850 case, New York Dry Dock. Literally, I'm quoting, if on a loan of money the principal is really put at hazard, there can be no usury, whatever rate of interest may be reserved. But if the hazard be merely coverable, otherwise. Williston says, if the borrower's situation is such that the loan entails a risk greater than sound business judgment would ordinarily warrant, the lender may be entitled to additional compensation in the form of a bonus. This case, literally in the trial court, and as we wrote the telebriefs, not a deposition, well, as we wrote the briefs, that's not true, but as the case was dismissed and ruled on by Judge Woods, we then, on a separate matter that had been set for arbitration for the AAA, we took the three people's depositions, Mr. Hudson and my client, Ilana Hirsch, and Mr. Barkatz, who drew the note, a total of like five or six days of depositions. Mr. Hudson admitted candidly, and let me just, again, just back up for a second. If there's any misconception here about Mr. Hudson that he was taken advantage of, that he didn't know anything, this man, again, started as Stuart James, was present several years in the industry. Wait a minute. You've got to understand why you're here. You're here from the dismissal of a complaint, right? So what was said in the discovery doesn't have any bearing on the issue before us. Do you understand that? Not exactly. I don't agree. Not exactly? I'm saying because- I'm suggesting exactly. No, I'm saying that Judge Woods ruled that $50,000 was $50,000. Because the contract, Mr. Thomas, said that restricted shares are valued at $50,000. Again, we accept when the parties value something in a contract at a certain amount, courts don't say they're wrong. It's not really worth what they say it's worth. It's worth something else. We go by what the contract says. But when you say courts don't say that, I've cited several cases that courts do. Every single case you cite that involved something involving shares, there was none. You can point me to the case where the parties valued the stock at a certain amount and the courts ignored it. In every one of the cases you cite, a certain number of shares were being proffered, and the dispute was how much they were worth because the parties didn't put a value in the contract. Here, they put the value in the contract. That's the big difference. And so your Honor is suggesting that if the note, let's just say it was worth 150 million shares, and it said there to transfer 150 million shares, which on that date were worth $50,000, that you would say, oh, that's not interest because it says 150 million shares. It doesn't say $50,000. I don't think that my adversary would consent to that interpretation if that's what we were here. Okay, that's like just putting- Give me a case in the history of New York law where a party has valued something at a certain amount in a contract that the courts then ignored that. I can't think of one. I can't find one. You didn't cite one. So give me one. Well, I cited the language from, again, the ADARS and the Scantech slash Cibella, which says exactly, you take the shares and you value them at their true- Which case? You're talking about Cibella? Cibella and ADARS? In Cibella, they said that she was entitled to receive enough stock to own 6%. And then there was a dispute over how much stock would equal 6%. That's completely different because the contract was silent, where here the contract was not silent. So Cibella has no application here. I disagree, and I only have 30 seconds. I'm saying, but again, I'm obviously not going to stand here and read what's in my paper, but I cite verbatim language from these cases that say that you take and you have expert testimony as to the true market value of the shares and not some paper-stated, quoted price on a bulletin board market when we all know that you can't trade them for that. So that, again, is, I think it's, I cited very clear cases and the ABA rules dealing with attorney's fees and how they would evaluate if you're getting shares. It's the true market value, and it's to be determined by expert testimony as to the market value. It's absurd to say that in a startup that they grant X number of shares and there's a quoted price that you can go out and, I'll use the word dump, 150 million shares or whatever. All these people that finance these startups, they take them for the whole thing for the risk. I mean, for the hope that the one out of 1,000 that they increase, that they make money on them, but we all know that 999 of them don't, they go out of business. So that's why, again, I've cited cases, if you look at my paper, that clear, again, from the Southern District, that you take the true fair market value and not the paper-stated value of it. And if you do that, I respectfully submit that there's no way that this was an interest rate that exceeded the user value. Thank you. Thank you, Mr. Thomas. Good afternoon, Your Honors.  My name is Carrie Parks, and I represent the appellees Livewire Ergogenics and Bill Hodson. Based on Your Honor's questioning, it seems like you all got the gist of my brief, so I don't want to repeat it verbatim. But I do have a couple points I want to make in response to Mr. Thomas's arguments today. The fact of the matter is that New York law is very clear, and frankly, And we see in New York law and cases discussed in the brief that as long as a certain document or a certain transaction is considered to be a loan, there are essentially two buckets of value within the loan. There's principle, and everything else is consideration. That's it. And Mr. Thomas's sort of anonymous Wall Street sources about what is or isn't appropriate, I don't think, besides the fact that they're not law and they're not supported and they're not named, are or aren't relevant, because if anything, if this note is drawn up every single day, it would suggest there is no mistake here. There's no mistake in drafting. It's not an accident. It is an unambiguous note, and Judge Woods properly decided this on the pleadings. As far as other specific points, Mr. Thomas has said, quote, I can take every case my adversary cited, end quote, and put it to his own argument. I'll just note that he didn't even file a reply brief. So if he wanted to do that and give us a preview of what those arguments are, he could have done that before. I don't know if this really needs to be said out loud, but New York Dry Dock, as Mr. Thomas noted, is a mid-19th century case that precedes our current usury statute by about 120 years. So the dicta in that about what in a hypothetical situation could or couldn't be usurious if there was really no risk at all is not really relevant to analyzing whether or not this particular note violated the current New York statute that actually exists and actually controls this case. Beyond that, I'm happy to answer any questions your honors might have, but I don't want to waste your time. Thank you very much. Thank you. We'll reserve the decision.